

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 21, 2024**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| MARY SUE RIDDLE, | § | Case No.: 20-60075-RLJ-13 |
| | § | |
| Debtor. | § | |
| | § | |
| MARY SUE RIDDLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Adversary No. 21-06001 |
| RUSHMORE LOAN MANAGEMENT | § | |
| SERVICES, LLC and U.S. BANK | § | |
| NATIONAL ASSOCIATION AS LEGAL | § | |
| TITLE TRUSTEE FOR TRUMAN 2016 | § | |
| SC6 TITLE TRUST, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court issues its findings of fact and conclusions of law on the action by plaintiff, Mary Sue Riddle, against defendants Rushmore Loan Management Services, LLC and U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust (Defendants).

1

Riddle contests the validity of the lien against her home and seeks damages associated with alleged improper collection efforts. She brings causes of action for (1) unreasonable collection efforts, (2) violations of the Texas Consumer Credit Code/Debt Collection Practices Act, (3) violations of the Fair Debt Collection Practices Act, (4) negligent misrepresentations/gross negligence, and (6) violations of the Real Estate Settlement Procedures Act. Riddle also seeks an accounting. Trial was held on October 27, 2023.

The Court's findings and conclusions are based upon the record before the Court and are issued under Rule 52 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**FINDINGS OF FACT**

1. Riddle purchased her home in 1999, but she no longer lives at the property central to the dispute. She now lives with her son, Duane Riddle, while her caretaker lives at the property.

2. On December 6, 2006, Riddle obtained a home equity loan and executed a promissory note in the amount of $127,000 with an interest rate of 6.79% per annum. Def. Ex. D-1.

3. The note states: "**HOME EQUITY LOAN. THIS LOAN IS AN EXTENSION OF CREDIT OF THE TYPE DEFINED BY SECTION (50)(a)(6), ARTICLE XVI, TEXAS CONSTITUTION**…." *Id*. at 2 (emphasis in original). The related deed of trust contains similar language: "**THE EXTENSION OF CREDIT EVIDENCED BY THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.**" Def. Ex. D-2 at 1

(emphasis in original). Within the deed of trust, Riddle granted a lien to "Bank of America, N.A." *Id*.

4. In the middle of 2011, Riddle stopped making payments on the property. Over the next year, she attempted to modify her loan with Bank of America.[1] The loan modification applications were consistently denied for lack of documentation; meanwhile Duane Riddle contends that all the documents were provided. Bank of America's last letter denying the loan modification is dated June 26, 2012. Def. Ex. D-8.

5. On September 12, 2012, Bank of America notified Riddle that Ocwen Loan Servicing, LLC would act as the loan servicer. Def. Ex. D-9. Ocwen contacted Riddle on October 5, 2012 with a letter informing her that it was the new servicer. Pl. Ex. 9 at APP-58. Three days later, Ocwen sent a letter notifying Riddle of the "Relationship Manager" assigned to her loan. Def. Ex. D-39. On December 10, 2012, Riddle sent a handwritten letter to Ocwen requesting that it obtain her home loan modification application documents she had submitted to Bank of America. Pl. Ex. 9 at APP-63. Riddle then requested a loan modification on December 30, 2012. Pl. Ex. 9 at APP-67.

6. An apparent lull in communication occurred over the next several months, until July 15, 2013, when Ocwen again notified Riddle of the Relationship Manager assigned to her loan. Def. Ex. D-40.

---

[1] In October 2011, Riddle sought to modify the terms of the loan with Bank of America. Pl. Ex. 9 at APP-30. Bank of America sent an acknowledgment of the modification application on October 19, 2011. *Id*. On January 23, 2012, Bank of America denied the modification for failure to provide documents. Pl. Ex. 9 at APP-35. Shortly thereafter, Riddle sent a letter to Bank of America to notify it that the loan is not compliant with the Texas Constitution. Pl. Ex. 9 at APP-38. Duane Riddle maintains that Bank of America never corrected the loan's shortcomings.

The story repeated in February 2012. It is not clear if Riddle provided extra documentation to continue her first loan modification application or if she submitted a new loan modification application. In any event, Bank of America denied the pending application and the Riddles (Mary Sue and Duane) responded. *See* Def. Ex. D-5; Pl. Ex. 9 at APP-45.

3

7. The following March 2014, Ocwen sent a notice to Riddle that her loan was delinquent.[2] Def. Ex. D-41. In April 2014, Ocwen sent a pre-foreclosure referral letter. Pl. Ex. 9 at APP-69–74; Def. Ex. D-42. That same month, April 2014, and again in May 2014, Ocwen sent two delinquency notices. Def. Exs. D-43 & D-44.

8. On June 2, 2014, Ocwen sent a letter outlining actions that Riddle can take to avoid the foreclosure process. Def. Ex. D-45. That same day, Power Default Services, Inc. sent a notice to Riddle that her loan was "referred" to it for purposes of collection and foreclosure. Pl. Ex. 9 at APP-78. Riddle responded with a letter, dated June 19, 2014, requesting information validating the debt under the Fair Debt Collection Practices Act. Pl. Ex. 9 at APP-76–77. On June 24, 2014, Ocwen sent yet another delinquency notice. Def. Ex. D-46.

9. On July 1, 2014, Ocwen sent another letter outlining alternatives to foreclosure, followed by an additional delinquency notice at the end of July. Def. Exs. D-47 & D-48.

10. Ocwen sent Riddle a letter describing mortgage assistance resources on August 18, 2014 and a delinquency notice the following day. Def. Exs. D-49 & D-50. On August 31, 2014, Riddle wrote to Ocwen disputing the amount due on her "Mortgage Account Statement dated August 11, 2014"; she requested information validating the debt. Pl. Ex. 9 at APP-84–85. On September 10, 2014, Ocwen again outlined alternatives to foreclosure. Def. Ex. D-51. And on September 11, 2014, Ocwen notified Riddle that it had received her request for information. Def. Ex. D-52. Another delinquency notice followed on September 18, 2014. Def. Ex. D-53. On September 26, 2014, Ocwen provided the information requested by Riddle. Def. Exs. D-54, D-55, & D-56. Ocwen then sent successive delinquency notices in October 2014, December

---

[2] Among other things, the letter states, "[a]s of 3/24/2014, you are 1003 days delinquent on your mortgage loan" and $38,913.26 must be paid to bring the loan current. Def. Ex. D-41.

4

2014, January 2015, February 2015, and March 2015.  Def. Exs. D-57, D-58, D-59, D-60, & D-61.

11.    Bank of America, N.A. transferred the loan to "Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as trustee of ARLP Trust 5," on January 8, 2015.  Def. Ex. D-3.  And in April 2015, BSI Financial Services notified Riddle that it, BSI, was taking over as the servicer of her loan.  Def. Ex. D-10.

12.    On May 23, 2015, Riddle requested that BSI validate the debt she owes.  Pl. Ex. 9 at APP-88–89.  On June 2, BSI acknowledged its receipt of the request.  Def. Ex. D-62.  BSI sent Riddle two responses to her information request; the first response was sent June 5, 2015, and a more extensive response was sent June 9, 2015.  Def. Exs. D-63 & D-64.

13.    On July 20, 2015, BSI sent a notice of default and intent to accelerate the amount due.  Def. Ex. D-65.  This prompted a flurry of overlapping requests and responses between Riddle and BSI.  BSI sent two letters notifying Riddle that BSI received her "written inquir[ies]" on August 19 and August 20, 2015.  Def. Exs. D-66 & D-67.  It is unclear exactly which "inquiries" are related to BSI's letters, but BSI presumably responded to those inquiries on October 1, 2015.  *See* Def. Ex. D-69.  BSI's counsel sent a notice dated August 24, 2015 that the note's maturity was accelerated.  Pl. Ex. 9 at APP-93.

14.    In August and September 2015, BSI sent a notice to Riddle that the property is not insured (or the insurance is about to expire); the notices asked for proof of hazard insurance. Def. Exs. D-12 & D-13.  The letters state that BSI will purchase a lender-placed hazard policy at

5

Riddle's expense. *Id*. (Jumping ahead, BSI notified Riddle that it purchased force-placed hazard insurance in a letter dated October 16, 2015.[3] Def. Ex. D-14).

15.  In a letter dated September 21, 2015, Riddle requested BSI "correct" an error regarding her home equity loan—namely that it process or at least obtain the loan modification applications Riddle submitted to previous loan servicers. Pl. Ex. 9 at APP-95–96. On September 28, 2015, BSI acknowledged it received a request—presumably Riddle's request that BSI correct the home equity loan. Def. Ex. D-68. Then on November 6, 2015, BSI responded and informed Riddle that BSI does "not have any information regarding the modification option you were seeking while your loan was with Bank of America." Def. Ex. D-70. Within that letter, BSI included information on borrower assistance. *Id*.

16.  Almost two years later, on June 30, 2017, "Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as trustee of ARLP Trust 5," assigned the loan to U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust, and on July 5, 2017, Fay Servicing, LLC replaced BSI as the mortgage servicer. Def. Exs. D-4 & D-71 at 5. Fay Servicing sent letters to Riddle concerning loss mitigation on February 2018, August 2018, and February 2019. Def. Exs. D-72, D-73, & D-74. These letters were addressed to Gagnon Peacock & Vereeke PC,[4] the law firm that represented Riddle in a lawsuit in the United States District Court for the Northern District of Texas.

17.  Fay Servicing sent a letter, dated May 29, 2019, informing Riddle that there were tax delinquencies on the property subject to the home equity loan. Def. Ex. D-75. This letter was also sent to Gagnon Peacock & Vereeke. *Id*. The letter stated that Fay Servicing will pay

---

[3] The October 16, 2015 letter includes a document titled Evidence of Insurance that says the policy is effective starting on August 25, 2015 until canceled. Looking even *farther* ahead, BSI sent another notice of lender-placed hazard insurance on September 2, 2016; the term for this policy is August 25, 2016 until canceled. Def. Ex. D-16.
[4] These three letters did not include a street address for the law firm.

the taxes "in order to protect the collateral lien position of the loan." *Id*. Fay Servicing also informed Riddle that if Fay Servicing must pay the taxes, then the loan will "be converted to an escrowed loan which will cause the monthly payment to increase in order to collect delinquent taxes paid and future taxes due." *Id*. Duane Riddle testified that he never saw this letter and was unaware of who paid the taxes.

18. More letters on loss mitigation followed in August 2019 and January 2020. Def. Exs. D-76 & D-77.

19. Defendant Rushmore Loan Management Services (Rushmore Loan Management) enters the picture; Fay Servicing sent a notice dated April 3, 2020 stating that the servicing of the mortgage was transferred to Rushmore.[5] Def. Ex. D-18.

20. Rushmore Loan Management sent letters to Riddle about loss mitigation in May 2020, July 2020, August 2020, October 2020, April 2021, and May 2021. Def. Exs. D-78, D-79, D-80, D-81, D-82, D-83, D-84, & D-85.

21. Riddle filed her chapter 13 petition on October 31, 2020. Case No. 20-60075, ECF No. 1.

22. After initiating her bankruptcy case, Riddle sent a letter to Rushmore Loan Management on June 30, 2022 requesting that Rushmore provide a copy of the notarized

---

[5] The loan servicing was transferred again on November 13, 2023, this time from Rushmore Loan Management to Rushmore Servicing. Case No. 20-60075, ECF No. 80.
    In short, the history of the loan servicers in this case begins when Bank of America notified Riddle that Ocwen would be the new loan servicer in October 2012 (notice of the transfer was sent in September 2012). Def. Ex. D-9. After Ocwen, BSI notified Riddle that it would be the loan's servicer in April 2015. Def. Ex. D-10. BSI was then replaced by Fay Servicing as shown by a July 2017 letter. Def. Ex. D-71 at 5. And then Rushmore Loan Management took the position as loan servicer in May 2020. Def. Ex. D-18. Finally, as mentioned above, Rushmore Servicing recently became the servicer in September 2023. Case No. 20-60075, ECF No. 80 at 2.
    To summarize the transfers between the loan owners, it began when Bank of America, N.A. assigned its interest to "Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as trustee of ARLP Trust 5," on January 8, 2015. Def. Ex. D-3. Then on June 30, 2017, the loan was assigned to one of the current defendants—U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust. Def. Ex. D-4.

7

Acknowledgement of Fair Market Value of the property subject to the lien.[6] Pl. Ex. 9 at APP-99. An acknowledgment of fair market value is a requirement under state law for a home equity loan. Tex. Const. art. XVI, § 50(a)(6)(Q)(ix). Rushmore Loan Management responded that Riddle's request was unclear, specifically that she requested a *notarized* acknowledgment of fair market value. Pl. Ex. 9 at APP-103. The response included an attached Acknowledgment of Fair Market Value (not notarized) signed by a successor in interest of Bank of America, the original lender—the successor's name indicates it was established in 2016, roughly ten years after the note was executed; no other evidence was provided on this point. Pl. Ex. 9 at APP-104.

23. Rushmore Loan Management filed a proof of claim for $190,484.83 in the bankruptcy case on December 4, 2020. Case No. 20-60075, Claim No. 2-1. The claim's calculations reflect an escrow deficiency of $6,409.42 that was included in the claim amount. *Id*. at 4; Pl. Ex. 9 at APP-110.

24. In July 2021, Rushmore Loan Management canceled the force-placed insurance and issued a refund because Riddle provided adequate proof of insurance. Def. Ex. D-97.

25. In the bankruptcy case, the Court confirmed Riddle's chapter 13 plan on October 21, 2021. Case No. 20-60075, ECF No. 64. In the order confirming her plan, Rushmore Loan Management's claim is listed as $190,484.83, and the value of the collateral securing the claim is $150,000. *Id*. at 3. At the hearing, both Riddle and the Defendants represented that the plan is paying the amount of the claim as opposed to the value of the collateral. But the representations

---

[6] The context of this request is important. In prior litigation between Riddle and Bank of America, Ocwen, and Christiana Trust, Bank of America attached an Acknowledgement of Fair Market Value to a pleading filed on April 17, 2017. Def. Ex. D-102 at 34. That Acknowledgment of Fair Market Value is *not* signed by Bank of America or any agent of Bank of America. *Id*. But the Acknowledgement of Fair Market Value provided by Rushmore Loan Management's counsel on September 6, 2022 included a signature by Truman 2016 SC6, LLC as successor in interest to Bank of America, N.A.; no date indicates when the signature was made. Pl. Ex. 9 at APP-104. Riddle implies that the most recent acknowledgement is fraudulent.

8

at the hearing are at odds with representations made in the Defendants' briefing where the Defendants state the claim is being paid up to the value of the collateral plus interest.[7]

26.  On October 14, 2021, one week prior to confirming her plan, Riddle commenced her complaint against Defendants seeking to invalidate the lien on her principal residence and other related relief.  ECF No. 1.[8]

## CONCLUSIONS OF LAW

1.  The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.  The action is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (C), and (K).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

### Injury

2.  In her pleadings, Riddle alleges that she suffered mental anguish, emotional distress, damage to her credit reputation, and was charged improper and excessive fees and interest.  *See* Pl.'s 2d Am. Compl., ECF No. 34.  The Court previously held that Riddle sufficiently pleaded an injury for purposes of defeating a motion to dismiss.  ECF Nos. 97 & 98.

3.  The claimed injuries are mostly unsupported.  Of her alleged claims, Riddle only presented evidence related to mental anguish and emotional distress and alleged improper fees and interest charges.  The evidence falls short of satisfying the injury requirement of her claims both for standing and for the elements of her causes of action.

---

[7] *See* Defendants' Trial Brief, ECF No. 75 at 1–2; Defendants' Proposed Findings of Fact and Conclusions of Law, ECF No. 73 at 8 ¶ 31; Proposed Pre-Trial Order, ECF No. 76 at 9 ¶ 37.  But note that the Defendants' Amended Trial Brief does not contain the same language, *see* ECF No. 129.

[8] "ECF No." refers to the numbered docket entry in the Court's electronic case file for Adversary No. 21-06001, unless otherwise stated.

9

4. The Court addresses the evidence that Riddle presented on her injury, then reviews the law on standing, and then details the causes of action. In the end, Riddle did not present evidence that she suffered an injury and did not satisfy the elements of her charges.

*Mental Anguish and Emotional Distress*

5. Riddle's evidence of her mental anguish and emotional distress is solely her son's testimony that she suffered because of the Defendants' actions. The evidence is insufficient to prove that Riddle's "injuries" were enough to sustain the alleged causes of action.

6. Under the Fifth Circuit's caselaw for federal claims[9] involving emotional harms, "a claim related to emotional distress requires a 'degree of specificity' and 'must be supported by evidence of genuine injury,' such as 'the observations of others,' 'corroborating testimony,' or 'medical or psychological evidence.'" *Bacharach v. SunTrust Mortg., Inc.*, 827 F.3d 432, 436 (5th Cir. 2016) (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001)); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 376–78 (5th Cir. 2000). In other words, the plaintiff must "present *specific* evidence of emotional damage: There must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm." *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002) (emphasis in original) (internal quotations and citations omitted).

7. In Texas, "emotional distress includes all highly unpleasant mental reactions…." *Vermillion v. Vermillion*, No. 07-20-00111-CV, 2022 Tex. App. LEXIS 7337, at *14, 2022 WL 4799019, at *5 (Tex. App.—Amarillo Sep. 30, 2022, no pet.). But the plaintiff must show she suffered more than "mere worry, anxiety, vexation, embarrassment, or anger." *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App—Houston [14th Dist.] 1994, no writ).

---

[9] Riddle brings two federal causes of actions: (1) violations of the Fair Debt Collections Practices Act, and (2) violations of the Real Estate Settlement Procedures Act.

10

8.  Riddle failed to meet her burden. In Duane Riddle's telling, his mother suffered because she was left to watch him deal with the long and agonizing history of the loan. After hearing the evidence, the Court is left with no way to discern the *nature* or *extent* of any mental distress.

*Improper Escrow and Interest Charges and Riddle's Chapter 13 Plan*

9.  Riddle complains of an unagreed-to escrow account and charges associated with that account. The exact amount of contested charges is found in the proof of claim where Rushmore Loan Management calculated that the "Escrow deficiency for funds advanced" is $6,409.42 (an amount both parties claim is being paid through the bankruptcy plan). Case No. 20-60075, Claim No. 2-1.

10. The Court finds the escrow and interest were appropriate because, as discussed below, the Deed of Trust permitted the lender to charge for taxes and insurance.

11. Riddle's chapter 13 plan impacts any alleged injury. At trial, both parties maintained that Riddle was paying $190,000 under the plan. This contradicts certain of the Defendants' own court filings. For example, the Defendants state: "[P]er the Order Confirming Plan, U.S. Bank's Proof of Claim will be paid only up to the principal balance of $150,000 plus interest rate at 6.79% per annum."[10]

12. The payments in the Court's order confirming Riddle's chapter 13 plan provide for total payments to Rushmore of $227,618.19.[11] Case No. 20-60075, ECF No. 64. This is despite the confirmation order stating that the value of the collateral was $150,000 and the claim

---

[10] *See* Def.'s Proposed Findings of Fact and Conclusions of Law, ECF No. 73 at 8 ¶ 31.
[11] The payments break down into the following steps: $2,542.38 per month starting with the disbursement in 11/2020; $2,528.69 per month starting with the disbursement in 08/2021; $4,262.70 per month starting with the disbursement in 11/2021; and $4,104.00 per month starting with the disbursement in 12/2021; the Plan is a 60-month plan. Case No. 20-60075, ECF No. 64 at 2 & 3.

11

was $190,484.83, with interest at 6.79%. *Id*. at 3. Both parties and the chapter 13 trustee all agree, however, that $190,484.83 is the amount amortized under the plan. Riddle cannot complain of an injury resulting from the very treatment she proposed for Rushmore under her chapter 13 plan.

*Damage to Credit Reputation*

13. Despite alleging that the Defendants' actions harmed Riddle's credit reputation, no evidence was produced at trial that Riddle's credit was harmed.[12]

**Standing**

14. Defendants argue that Riddle lacks standing to prosecute her claims. And as discussed in the Court's Memorandum Opinion and Order denying the Defendants' motion to dismiss for lack of standing, Riddle must maintain standing at "all stages of litigation… with the manner and degree of evidence required at the successive stages of the litigation." *See* ECF No. 97 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (internal quotations removed)). Because the Court derives its jurisdiction from the District Court, the same limits apply to the Court's jurisdiction; of concern here is standing.

15. The specific standing issue pertains to Riddle's alleged injuries. Article III of the Constitution confines the federal judicial power to "Cases" and "Controversies." *TransUnion LLC*, 594 U.S. at 423. From there, a case or controversy requires that the plaintiff have a "personal stake in the case—in other words, standing." *Id*. (internal quotation marks omitted).

---

[12] The Court did not permit Riddle to offer evidence that was provided untimely, which included two credit reports. ECF Nos. 136 & 137.

12

And, again, this standing must be maintained throughout litigation with the requisite level of proof at each stage.[13] *Id*. at 431.

16. To demonstrate her standing, a plaintiff must show "(i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. at 423. Riddle did not provide any evidence on damage to her credit reputation; she did not prove any mental anguish or emotional distress; nor did she prove that Rushmore Loan Management improperly charged her $6,409.42.

17. Defendants are correct that Riddle failed to prove she suffered any injury that permits her to prosecute her allegations. Riddle did not demonstrate she has standing to bring her action.

## Causes of Action

### *Unreasonable Collection Efforts*

18. The elements constituting the common law tort of unreasonable collection efforts are "not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). District courts in the Northern District of Texas have required that plaintiffs show "that Defendants' actions in attempting to collect on the debt were part of 'a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'" *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 624 (N.D.

---

[13] "Therefore, in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing must be supported adequately by the evidence adduced at trial." *TransUnion LLC*, 594 U.S. at 431 (internal quotation marks omitted).

13

Tex. 2011) (quoting *EMC Mortg.*, 252 S.W.3d at 868–69).[14] Riddle claims the Defendants' unreasonable collection efforts caused her to suffer damages to her credit and credit reputation, mental anguish, and emotional distress. Pl.'s 2d Am. Compl., ECF No. 34 ¶ 27.

19. First, Riddle failed to prove that the Defendants engaged in any behavior that was unreasonable. Second, Riddle did not propose any vehicle by which Defendants could be liable for any prior mortgage holder's or mortgage servicer's alleged unreasonable collection efforts. And Riddle failed to prove she suffered an injury because of any unreasonable collection efforts that the Court can remedy.

20. Riddle's claim for unreasonable collection efforts fails.

*Violation of the Texas Consumer Credit Code/Debt Collection Practices Act*

21. Through her TDCPA[15] claim, Riddle asks to recover actual damages and attorney's fees.

22. In a prior lawsuit before the District Court here, the court held that Riddle's TDCPA claims against the previous mortgagor and servicer "fail because the debt at issue is a home-equity loan." Def. Ex. D-23 at 10. The District Court granted summary judgment holding that Riddle "failed to create a genuine issue of material fact that she did not in fact owe the debt and that the debt was in default…." *Id*. The court held that the loan was "clearly foreclosure-eligible" and that Christiana Trust and BSI Financial, the prior holder and servicer of the loan, were entitled to summary judgment on Riddle's TDCPA claims. *Id*. Each specific wrongdoing that Riddle alleges under the TDCPA fails.

---

[14] *See also Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010); *Steele v. Green Tree Servicing, LLC*, No. 3:09-cv-0603-D, 2010 U.S. Dist. LEXIS 92756, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010) (Fitzwater, C.J.).
[15] "TDCPA" refers to the Texas Debt Collection Practices Act under Chapter 392 of the Texas Finance Code.

23. The cornerstone of the remaining TDCPA analysis, with one exception, is the communications between the Defendants and Riddle.

*Section 392.302(1)*

24. Section 392.302(1) of the Texas Finance Code prohibits debt collectors from oppressing, harassing, or abusing a person by using "language intended to abuse unreasonably the hearer or reader." Tex. Fin. Code § 392.302(1). Riddle alleges the Defendants did just that. Riddle did not prove, however, that any of Defendants' language oppressed, harassed, or abused her. Accordingly, she also failed to prove that any language was *intended* to oppress, harass, or abuse her.

*Section 392.303(a)(2)*

25. In collecting debts, § 392.303(a)(2) prohibits debt collectors from unfairly or unconscionably collecting or attempting to collect a charge or incidental expense of a debt obligation unless that charge is expressly authorized by the agreement. Tex. Fin. Code § 392.303(a)(2). This claim is the only TCDPA claim alleged by Riddle that does not hinge on representations made by the Defendants. Instead, Riddle claims the Defendants attempted to collect charges and expenses that were not expressly authorized by the agreement between the parties, including an escrow account for future hazard insurance payments. But this allegation falls short; the Deed of Trust contains a clause that states if Riddle fails to pay taxes or provide insurance, the lender may do so and charge the expenses to her account. Def. Ex. D-2 at 2–3.

*Section 392.304(a)(8)*

26. The introductory language in § 392.304(a)—"a debt collector may not use a *fraudulent, deceptive, or misleading representation*"—applies to all subparagraphs. Tex. Fin. Code § 392.304(a) (emphasis added). Thus, for a claim to have merit under the statute, the debt

15

collector must make a representation that is fraudulent, deceptive, or misleading and that representation must satisfy one of the criteria in subparagraphs (1) – (19). Riddle did not prove that any of Defendants' representations were fraudulent, deceptive, or misleading.

27. But looking only to § 392.304(a)(8), in a debt collection or act to obtain a consumer's information, a debt collector may not "use a fraudulent, deceptive, or misleading representation that … misrepresent[s] the character, extent, or amount of a consumer debt." Tex. Fin. Code § 392.304(a). Riddle did not prove that there were any misrepresentations made about the character, extent, or amount of the debt.[16]

*Section 392.304(a)(12) & (13)*

28. Also in a debt collection, debt collectors may not fraudulently, deceptively, or misleadingly represent that a consumer debt "may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12). Likewise, debt collectors may not use a fraudulent, deceptive, or misleading representation that "a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion." Tex. Fin. Code § 392.304(a)(13).

29. The promissory note includes a provision stating that "[the borrower] will pay Lender's reasonable attorneys' fees." Def. Ex. D-1 at 1. But Riddle did not prove any instance

---

[16] To bolster the point, it should be noted that even if there were misrepresentations made about loan modifications, "[t]he law is clear that '[d]iscussions regarding loan modification … are not representations, or misrepresentations, of the amount or character of the debt' under §§ 392.304(a)(8) and 392.304(a)(19)." *Dickey v. State Farm Bank, F.S.B.*, No. H-18-770, 2018 U.S. Dist. LEXIS 91036, at *12, 2018 WL 2454159 (S.D. Tex. May 10, 2018) (quoting *Watson v. Citimortgage*, Inc., No. 4:10-CV-707, 2012 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012), *aff'd*, 530 F.App'x 322 (5th Cir. 2013)); *see also Chavez v. Wells Fargo Bank, N.A.*, 578 F.App'x 345, 348 (2014) (referencing *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)). But again, Riddle did not prove that any communications concerning loan modification were misrepresentations.

16

where the Defendants made a representation that Riddle may or would need to pay attorneys' fees. After reviewing the numerous writings between Riddle and the Defendants (and their predecessors), the Court finds no statements that violated either § 392.304(a)(12) or (13).

*Section 392.304(a)(19)*

30. The last provision of the TDCPA that Riddle alleges the Defendants violated is § 392.304(a)(19), which provides that a debt collector may not "use[] any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."[17] Tex. Fin. Code § 392.304(a)(19). Again, Riddle did not show that the Defendants used any false representations or employed deceptive means.

31. Riddle's TDCPA claims fail on the basic elements and because she did not show she suffered any injury.

*Violations of the Fair Debt Collections Practices Act*

32. Riddle claims the Defendants violated two provisions of the FDCPA: 15 U.S.C. §§ 1692g and 1692e.[18] Her amended complaint alleges that the Defendants never validated the debt, as required by 15 U.S.C. § 1692g, after she notified the Defendants that she disputes the debt. ECF No. 34 at 9–10. Section 1692g requires debt collectors validate debts after a consumer sends notice requesting such a validation. One problem with Riddle's charge is that she did not provide any evidence that she requested a validation from Rushmore Loan Management. Instead, the most recently provided notices requesting debt validations and disputing the debt were provided years before in 2014 and 2015. And the FDCPA requires the

---

[17] In an unpublished opinion, the Fifth Circuit noted that a claim under § 392.04(a)(19) requires an affirmative statement. *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F.App'x 253, 257 (5th Cir. 2013).
[18] "FDCPA" refers to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.

action be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *Rotkiske v. Klemm*, 140 S. Ct. 355, 360, 205 L. Ed. 2d 291 (2019).

33. Riddle's Trial Brief and Proposed Findings of Fact and Conclusions of Law also include allegations that Defendants violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations to collect amounts due—the amounts the Defendants claim were due from the force-placed insurance policy. ECF Nos. 79 at 9–10 & 80 at 8. And again, Riddle did not show the Defendants used any false, deceptive, or misleading representations.

34. Riddle's FDCPA claims fail.

*Negligent Misrepresentation/Gross Negligence*

35. The elements for a negligent misrepresentation in Texas are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *GE Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005).

36. Riddle failed to prove that the Defendants offered false information and did not exercise reasonable care. Further, she did not show that she suffered a pecuniary loss by relying on any representation made by the Defendants.

37. Riddle's trial brief fails to address any claim for gross negligence. And she failed to prove that the Defendants were grossly negligent. Riddle's claims for negligent misrepresentation and gross negligence fail.

*Violations of the Real Estate Settlement Procedures Act*

38. Without specifying a statutory provision, Riddle claims that the Defendants improperly handled her applications for loan modification in violation of the Real Estate Settlement Procedures Act (RESPA). Riddle does, however, look to 12 C.F.R. § 1024.41, which provides when a servicer receives a complete loss mitigation application more than 37 days prior to a foreclosure sale, the servicer has 30 days to evaluate the loss mitigation options available to the borrower and provide notice of those options to the borrower. 12 C.F.R. § 1024.41(c)(1). These requirements are only applicable if the servicer receives a complete loss mitigation application.

39. In any event, the most recent loan modification application (a type of loss mitigation) was December 30, 2012. RESPA provides that an action under RESPA must be brought within 1 to 3 years of the RESPA violation (depending on the violated provision). 12 U.S.C. § 2614. The charges by Riddle fall well outside the statute of limitations.

40. In each instance where Riddle sought a loan modification, the servicer (notably, not Rushmore Loan Management) notified Riddle that pertinent information was missing. Duane Riddle contends, however, that those assertions are incorrect and that all documentation was provided. The scant evidence presented is not enough to convince the Court that the loan modification applications were mishandled at all, and, more precisely, mishandled by the Defendants.

41. Riddle's charges that Defendants violated RESPA fail.

*Accounting*

42. An accounting is an equitable remedy—generally sought in conjunction with other causes of action—and is proper when the facts are so complex that adequate relief cannot

19

be obtained at law. *Brown v. Cooley Enters.*, No. 3:11-CV-0124-D, 2011 U.S. Dist. LEXIS 61103, at *4–5, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011) (Fitzwater, J.). "When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). "Granting an accounting is within the discretion of the trial court." *Brown*, 2011 WL 2200605, at *1 (citing *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied)).

43.  An accounting is not an appropriate remedy here. Riddle suffered no injury which may be remedied by an accounting.

44.  The issues here raise mixed questions of fact and law. Accordingly, where appropriate, findings of fact may be considered conclusions of law and conclusions of law may be considered findings of fact.

## CONCLUSION

Riddle's charges fail. She failed to prove injury or the requisite elements of her charges. The Court will issue its order denying all relief requested.

### End of Findings of Fact and Conclusions of Law ###